UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SOURCE, INC.,                          )
                                       )
            Plaintiff,                 )
                                       )        CIVIL ACTION NO.
VS.                                    )
                                       )        3:05-CV-1414-G
SOURCEONE, INC.,                       )
                                       )        **ECF**
            Defendant.                 )


MEMORANDUM OPINION AND ORDER


Before the court is the motion of the plaintiff, Source, Inc. ("Source"), for

partial summary judgment on its 15 U.S.C. § 1114(1)(a)-(b) trademark infringement

claims against the defendant, SourceOne, Inc., ("SourceOne"), and on SourceOne's

third, fourth, seventh, eighth, and ninth affirmative defenses.  For the reasons stated

below, Source's motion is granted in part and denied in part.

I.  BACKGROUND

Source filed its original complaint in this court on July 15, 2005, alleging that

SourceOne infringed, and continues to infringe, upon its trade and service mark.[1]

---

[1]      Specifically, Source alleges that SourceOne's use of the word "source"
(continued...)

Plaintiff's Original Complaint ("Complaint").  On September 6, 2005, SourceOne filed an answer, in which it asserted nine affirmative defenses and six counterclaims.  Defendant's Answer, Affirmative Defenses, and Counterclaims ("Answer").  On April 14, 2006, Source filed this motion for partial summary judgment on its section 1114(1) trademark infringement claims and on five of the nine affirmative defenses asserted by SourceOne.  Plaintiff's Motion for Partial Summary Judgment and Supporting Brief ("Motion for Summary Judgment").

Source is a telecommunications corporation that offers new and refurbished communications equipment to customers on a nation-wide basis.  Complaint ¶ 5.  It is the owner of the common law trademark and service mark "Source."  *Id*. ¶ 6.  It has continuously used the mark in connection with the sale of communications equipment since March 1, 1972.  *Id.*  Source first registered its mark in 1989.  Motion for Summary Judgment ¶ 2.

SourceOne is a "strategic technology vendor providing enterprise data and voice solutions" to customers on a nation-wide scale.  Defendant SourceOne, Inc.'s Brief in Support of Response to Plaintiff Source, Inc.'s Motion for Partial Summary Judgment, and Objections to Source's Summary Judgment Evidence ("Response")

---

[1](...continued)
violates 15 U.S.C. §§ 1114(1)(a)-(b), 1125(a)(1)(A), 1125(c)(1); TEX. BUS. & COMM. CODE ANN. §§ 16.26(a)(1)-(2), 16.29; and Texas common law relating to trademarks and unfair competition.  Complaint ¶¶ 22-29.

¶ 1.  SourceOne first used the name "SourceOne" in 1995 and has never registered it. Motion for Summary Judgment ¶ 5.

While Source and SourceOne do not provide identical services to an identical customer base, there is some overlap in the voice and communications market.  *Id.* ¶ 6; Response ¶ 2.  Approximately 80% of SourceOne's total business is unrelated to the services provided by Source.  Response ¶ 2.  Only the remaining 20% of SourceOne's total business relates to voice and communications solutions.  *Id*.  Both corporations are strategic business partners of Avaya, a third party manufacturer and provider of communications equipment.  Motion for Summary Judgment ¶ 6.  Over the past decade, employees of Avaya have confused the identities of the two companies on numerous occasions.  Affidavit of Karl Jackson, *attached to* Motion for Summary Judgment *at* 6-7 ("Jackson Affidavit").

Prior to the commencement of this action, the only direct contact between the two corporations involved a work order submitted by Source to SourceOne in August 2000.  Response ¶ 4.  Subsequent to that work order, Source sent SourceOne a cease and desist letter indicating that Source considered SourceOne's use of the word "source" to be trademark infringement.  *Id.*  On February 16, 2001, SourceOne responded to the cease and desist letter by mail and denied Source's allegations of trademark infringement.  *Id.* Source apparently took no further action until it filed this suit in July 2005.  *Id.*

## II. ANALYSIS

### A. Procedural Deficiencies in Source's Motion
### for Partial Summary Judgment

In its response, SourceOne objects, pursuant to Local Rule 56.3, to the form of Source's motion for summary judgment. Response ¶ 13. Specifically, SourceOne objects on the grounds that Source's motion "(1) fails to contain a summary, (2) does not contain legal and/or factual grounds on which the moving party relies, (3) does not cite to an appendix, and (4) erroneously contains argument and authorities." *Id*. In an effort to correct these procedural deficiencies, Source has moved the court for leave to file an amended motion.[2] Plaintiff's Motion for Leave to File Plaintiff's Amended Motion for Partial Summary Judgment. ("Motion for Leave").

Notwithstanding the local civil rules, the court can direct the parties to proceed in any manner that it deems just and expeditious. Local Rule 83.1. As the instant defects are non-prejudicial and purely procedural in nature, the twin goals of justice and expediency are better served by allowing the defective motion to stand as opposed to forcing Source to re-file. This is especially true in light of the fact that the proposed amended motion is substantively identical to the original motion. For these reasons, the court will waive the procedural deficiencies and consider the original motion as though it had been properly filed.

---

[2]     Source also filed a document styled "Plaintiff's Amended Motion for Partial Summary Judgment." This document and the original motion for summary judgment differ only in form. They are substantively identical.

B.  <u>Objections to Summary Judgment Evidence</u>

Both Source and SourceOne raise objections to particular affidavits pertaining

to the motion for summary judgment and the response thereto.  Source objects to the

Smith affidavit on the grounds that it is hearsay and does not reflect Smith's personal

knowledge of the subject matter.  SourceOne objects to the Jackson affidavit in its

entirety on the grounds that it is not verified as true and correct.  Response ¶ 15.

Alternatively, SourceOne objects to particular phrases in the affidavit that are

"hearsay, opinion, conclusory allegations, speculation, unsubstantiated assertions and

legal arguments."  Response ¶ 17.

Supporting and opposing affidavits must (1) state admissible facts, (2) be

based on personal knowledge, and (3) demonstrate that the affiant is competent to

testify.  FED. R. CIV. P. 56(e).  In reaching its decision, the court has only considered

summary judgment evidence that meets this standard.  Evidence that does not meet

this standard was disregarded by the court.  Accordingly, the parties' respective

objections are overruled as moot.

C.  <u>Source's Motion for Summary Judgment</u>

Source has moved for summary judgment on its 15 U.S.C. § 1114(1)

trademark infringement claims and on five of the nine "affirmative defenses"[3] raised

---

[3]     SourceOne asserts nine "affirmative" defenses; however, SourceOne's
first defense (that Source fails to state a claim), second defense (that there is no
likelihood of confusion), fifth defense (that there has been no dilution), and sixth

(continued...)

by SourceOne in its answer.  The affirmative defenses moved upon are SourceOne's

third affirmative defense (that the mark "Source" is descriptive), fourth affirmative

defense (abandonment), seventh affirmative defense (laches, waiver, and estoppel),

eighth affirmative defense (acquiescence), and ninth affirmative defense (that

SourceOne's use constitutes fair and/or nominative use of the mark).

### 1.  *Evidentiary Burdens on Summary Judgment*

Summary judgment is proper when the pleadings and evidence before the court

show that no genuine issue exists as to any material fact and that the moving parties

are entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).[4]  The movant

makes such a showing by informing the court of the basis of its motion and by

identifying the portions of the record which reveal there are no genuine material fact

issues.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986).  "[T]he substantive

law will identify which facts are material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that

--------

[3](...continued)
defense (that Source's mark is not famous) are not affirmative defenses.  The first is
essentially a statement of Rule 12(b)(6) and, in the absence of a 12(b)(6) motion, it
is essentially meaningless.  The remainder of the defenses attempt to negate an
element of one of Source's claims; thus, they are not affirmative in nature.

[4]        The disposition of a case through summary judgment "reinforces the
purpose of the Rules, to achieve the just, speedy, and inexpensive determination of
actions, and, when appropriate, affords a merciful end to litigation that would
otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190,
1197 (5th Cir. 1986).

a reasonable jury could return a verdict for the nonmoving party." *Id.* The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

Once the movant makes this showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must show that the evidence is sufficient to support a resolution of the factual issue in its favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the nonmovant, *id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's summary judgment burden. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to its case and as to which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

2.  *The Trademark Infringement Claims*

To demonstrate trademark infringement under 15 U.S.C. § 1114(1), a plaintiff

must prove (1) that it is the owner of a valid and protectable mark and (2) that the

defendant's use of the mark creates a likelihood of confusion.  15 U.S.C. § 1114(1);

*Fuji Photo Film Company v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 594 (5th

Cir. 1985) ("Likelihood of confusion is thus the central issue in any suit for

trademark infringement") (internal quotations omitted).

a.  <u>A Valid and Protectable Mark</u>

By producing the Jackson affidavit and the exhibits attached thereto, Source

has established that it owns a valid and incontestable mark.[5]  Jackson Affidavit ¶ 3.

SourceOne, however, argues that Source's mark is not incontestable in this situation

because the mark does not embrace the goods and services in question.  Response

¶ 26.  Source's registered service mark covers:

---

[5]        Under 15 U.S.C. § 1065, a mark becomes incontestable if the owner has
used it continuously in connection with the goods or services specified in the
registration for five years after the date of registration provided that (1) there has
been no final adverse decision to the registrant's claim; (2) there is no current
proceeding involving the mark; (3) an affidavit stating that the mark has been in
continuous use for five years is filed within one year of the expiration of the five year
period; and (4) the mark is not the generic name for the goods or services for which it
is registered.
        Source has established that its mark is incontestable.  15 U.S.C.
§ 1115(b) provides that a mark's incontestability is "conclusive evidence of the
validity of the registered mark."  That section goes on to say, however, that such
conclusive evidence extends only to the goods and services specified in the affidavit.

> Business management consultation services in the purchase
> and rental of telephone equipment and systems . . .
> installation, repair, reconditioning, refurbishment and
> maintenance of telephone parts, equipment, and systems
> . . . telecommunication services and rental services in the
> field of telephone parts, equipment and systems.

Service Mark Principal Register, *attached to* Jackson Affidavit *as* Exhibit 1.  Source's

registered trademark covers "new and reconditioned telecommunications equipment,

[including] telephone sets and parts thereof, switching apparatus and private branch

exchanges."  Trademark Principal Register, *attached to* Jackson Affidavit *as* Exhibit 1.

SourceOne argues that Source's mark, which embraces only traditional

communications systems, cannot possibly cover "design and implementation of

Internet Protocol telephone [systems] allowing voice, video and data collaboration"

because that technology simply did not exist at the time of registration.  Response

¶ 26.  It is primarily in this non-traditional communications market that the

potentiality for competition exists between the two companies; thus, SourceOne

argues, a genuine issue of fact exists as to whether the mark is applicable in this

situation.  *Id*.

Trademark protection is not limited to the goods and services specified in the

registration but extends to any goods or services which are likely to cause confusion in

the market.  *Hindu Incense v. Meadows*, 692 F.2d 1048, 1050 (6th Cir. 1982); see

*Maier Brewing Company v. Fleischmann Distilling Corporation*, 390 F.2d 117 (9th Cir.)

(noting that the Lanham Act's[6] focus is on the creation of a likelihood of confusion as opposed to the previous trademark act's focus on the type of goods infringed), *cert. denied*, 391 U.S. 966 (1968).  The high-tech voice and data collaboration goods and services now provided by Source are sufficiently similar to the traditional telecommunication goods and services specified in the registration to come within the scope of the trademark's protection.[7]  Therefore, as SourceOne has failed to direct the court to any evidence that could create a genuine issue of material fact on this issue, Source's showing that it is the owner of a valid trademark is sufficient to satisfy the first prong of the test.

### b.  Likelihood of Confusion

The second prong of the test requires the plaintiff to prove that the defendant's use of the mark in question creates a likelihood of confusion.  A likelihood of confusion is something more than a mere possibility of confusion; a probability of confusion is a better approximation of the degree of likelihood necessary to satisfy the test.  See *Blue Bell Bio-Medical v. Cin-Bad, Inc.*, 864 F.2d 1253, 1260 (5th Cir. 1989).  The 5th Circuit has enumerated a non-exhaustive list of

---

[6]     The sections of the United States Code upon which Source makes its motion are codifications of the "Lanham Act," which is named for its principal proponent.

[7]     Both categories of goods and services represent methods of communication.  It is not as though Source is attempting to exert the mark's protection over an entirely unrelated industry.

factors that a court should consider when making this determination:  "(1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion."  *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 664 (5th Cir. 2000).  No one factor is controlling, *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985), and the court is free to consider other factors in reaching its decision.  *Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155, 1160 (5th Cir. 1982).

### i.  Type of Mark Infringed

The first enumerated factor refers to the relative "strength" of the trademark. *Elvis Presley Enterprises v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998).  Marks can be classified into one of five increasingly protective categories:  (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  Marks that fall into one of the latter three categories are considered strong and are entitled to greater protection.  *Id.*  "Source" is properly classified as an arbitrary mark because it does not suggest anything about the nature of the goods and services offered by telecommunications company.  See *Union National Bank of Texas, Laredo v. Union National Bank of Texas, Austin*, 909 F.2d 839, 845 (5th Cir. 1990) (discussing the definitions of the different categorical terms).

- 11 -

SourceOne, in an attempt to combat the strength of the mark, argues that the mere multitude of communications companies that incorporate the word "source" into their names indicates the relative weakness of the mark.  Response ¶¶ 32-33. This proposition has some merit. See *Armco*, 693 F.2d at 1159-1160 (noting that an absence of third-party use contributes to the strength of a mark); see also *Amstar Corporation v. Domino's Pizza, Inc.*, 615 F.2d 252, 260 (5th Cir.) (noting that extensive third-party use should be considered in determining strength of mark), *cert. denied*, 449 U.S. 899 (1980).  In light of the arbitrariness of the mark and its relative prominence in the market, the mark is neither patently strong nor inherently weak.

ii.  Similarity of the Marks

The similarity of the mark and the purported infringing use is determined by comparing their appearance, sound, and meaning.  *Elvis Presley Enterprises*, 141 F.3d at 201.  The relevant inquiry is whether the mark and the alleged infringing use are so similar that the average consumer is likely to be confused.  *Id.*  In making this determination, the court can take notice of logos, labels, and the context of usage.  *Id.*

The summary judgment evidence suggests that the only similarity between the marks in this case is the incorporation of the word "source" into SourceOne's name. The companies' logos and labels are similar only insofar as SourceOne's logo includes the word "source."  *Compare* SourceOne logo, *attached to* Answer *as* Exhibit 1 ("SourceOne Logo"), *with* Source Logo, *attached to* Answer *as* Exhibit 2 ("Source

Logo"). Source's logo is red, is in a special font, and is capitalized. See *Source Logo*.

SourceOne's Logo, on the other hand, is blue (or black) and yellow, in a different

font, and not capitalized. *See* SourceOne Logo. Any likelihood of confusion would

therefore most likely arise out of the auditory similarity of the marks and not out of

their physical appearance.

iii.  Similarity of Products and Services

The likelihood of confusion is greater where the products or services provided

by the owner of a mark and the alleged infringer are similar. *Exxon Corporation v. Texas*

*Motor Exchange of Houston, Inc.*, 628 F.2d 500, 505 (5th Cir. 1980). The summary

judgment evidence establishes that Source and SourceOne are both dealers for Avaya

and Cisco communications equipment. Jackson Affidavit ¶¶ 7-8. The court notes,

however, that the sale of such equipment accounts for only a small percentage of

SourceOne's total business. Response ¶ 36.

iv.  Identity of Retail Outlets and Purchasers

Dissimilarities between the retail outlets for and the predominate consumers of

the parties' goods and services lessens the likelihood of confusion. *Amstar*, 615 F.2d

at 262. While Source asserts that both companies "sell communications systems and

services to businesses large and small across the country," Motion for Summary

Judgment at 10, it fails to direct the court to any summary judgment evidence

demonstrating that Source and SourceOne are direct competitors. SourceOne, on the

other hand, proffers the Sells affidavit, which suggests that the companies are not

direct competitors, have never lost business to each other, and that SourceOne does

not even consider Source to be a competitor in its market.  Affidavit of Steven Sells,

*attached to* Response *as* Exhibit 1 *at* A1-A4 ("Sells Affidavit").

### v.  Advertising Medium Used

There is a greater likelihood of confusion when the advertising methods

implemented by the parties are similar in nature.  *Exxon Corporation*, 628 F.2d at 506.

The summary judgment evidence reveals only that both parties advertise on their

respective websites.  Accordingly, they use the exact same medium to advertise.

### vi.  SourceOne's Intent

Proof of intent to deceive is not a condition precedent to a finding of a

likelihood of confusion; however, proof of intent to deceive, standing alone, may be

sufficient to justify such a finding.  *Elvis Presley Enterprises*, 141 F.3d at 203.  Where a

defendant acted in good faith, this "digit of confusion" becomes a non-factor in the

analysis.  *Id.*  It weighs neither in favor of a likelihood of confusion nor against it.  *Id.*

In the instant case, Source admits that there is no summary judgment evidence

specifically demonstrating that SourceOne acted in bad faith.  Motion for Summary

Judgment at 11-12.  SourceOne, however, has offered evidence demonstrating that

the origin of its name was not intended to inject confusion into the market place.[8]

---

[8]     Sells avers that the name SourceOne was intended to indicate to

(continued...)

Sells Affidavit at A3.  Therefore, this factor weighs neither one way nor the other in the analysis.

### vii.  Actual Confusion

While evidence of actual confusion is not necessary to a finding of a likelihood of confusion, "it is nevertheless the best evidence of a likelihood of confusion." *Elvis Presley Enterprises*, 141 F.3d 203-204 (quoting *Amstar Corp.*, 615 F.2d at 263); *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971) ("[W]hile very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof.").  While trademarks seek to protect the ultimate consumer from confusion, the identity of the person confused is essentially a non-factor in the likelihood of confusion analysis.  See *Fuji Photo Film Company*, 754 F.2d at 597 (noting that the 5th Circuit has never totally disregarded evidence of actual confusion, regardless of the identity of the person confused).

Source has presented substantial evidence demonstrating that employees of Avaya have confused the identities of the two companies on numerous occasions.  Jackson Affidavit ¶¶ 12-17.  SourceOne does not refute that evidence; instead, it argues that "the relevant inquiry is whether the use of the mark produces confusion in

---

[8](...continued)
SourceOne's customers that they needed only "one source for their data server, storage and voice needs."  Sells Affidavit at A3.

*potential* customers." Response ¶ 34 (emphasis in original).  Despite the evidence of actual confusion, SourceOne's argument is appealing in light of the aforementioned evidence suggesting that the two companies have not ever competed directly for the same business.  After careful consideration of this argument, however, and the authorities on which it relies (the majority of which are not Fifth Circuit cases), the court is ultimately unpersuaded by it.

### viii.  Weighing the Factors

Source bears the burden of proof on the trademark infringement claims; thus, it is its responsibility to demonstrate that no reasonable jury, upon consideration of the summary judgment evidence, could return a verdict in favor of SourceOne. *Anderson*, 477 U.S. at 248.  Source's presentation of evidence demonstrating actual confusion weighs heavily in its favor; however, SourceOne's presentation of evidence demonstrating that the two companies have never competed for business and are unlikely to compete directly in the future weighs perhaps as heavily in its favor. Careful consideration of the digits of confusion, in light of the summary judgment evidence proffered by both parties, reveals that Source has failed to meet its evidentiary burden on the motion for summary judgment.  Source has not established that no reasonable jury could return a verdict in favor of SourceOne.

3.  *The Affirmative Defenses*

Source's mark is incontestable under 15 U.S.C. § 1065.  *See* FN 5 *supra*.  An incontestable mark is subject only to the defenses enumerated in 15 U.S.C. § 1115(b), including abandonment, laches, estoppel, acquiescence, and fair use.

a.  Third Affirmative Defense -- That the Mark is Descriptive

SourceOne argues that Source's mark is invalid because it is descriptive and lacks secondary meaning.  Answer at 5.  This defense is not listed among the available defenses to an incontestable mark under 15 U.S.C. § 1115(b).  Moreover, in *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 191, 205 (1985), the United States Supreme Court held that an incontestable mark may not be defended against on the grounds that it is merely descriptive.  Therefore, Source is entitled to summary judgment on this defense.

b.  Fourth Affirmative Defense -- Abandonment

15 U.S.C. § 1115(b)(2) expressly preserves the defense of abandonment. Under the Lanham Act, a mark shall be deemed abandoned "[w]hen its use has been discontinued with intent not to resume such use."  15 U.S.C. § 1127.  The party asserting abandonment must present evidence demonstrating that the owner of the mark both (1) discontinued use of the mark and (2) intended not to resume its use. *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 293 (5th Cir. 2004).

The summary judgment evidence indicates that Source has continuously used its trade mark since 1972. Jackson Affidavit ¶ 4. As SourceOne has failed to direct the court to any evidence suggesting that Source actually abandoned its mark with an intent to not resume its use, summary judgment denying this defense is granted.

c.  <u>Seventh Affirmative Defense -- Laches, Waiver,[9] and Estoppel</u>

The essence of SourceOne's seventh affirmative defense is laches and not estoppel. Equitable estoppel requires the defendant to prove intentional deception through concealment or inaction or gross negligence amounting to constructive fraud. *Matter of Henderson*, 577 F.2d 997, 1001 (5th Cir. 1978). SourceOne proffers no such evidence in this case. Laches, on the other hand, is commonly defined as an inexcusable delay that results in prejudice to the defendant. *Conan Properties*, 752 F.2d at 153. To successfully assert the defense of laches, the defendant must prove three elements: (1) delay in asserting one's trademark rights; (2) lack of excuse for the delay; and (3) undue prejudice to the alleged infringer by the delay. *Environmental Defense Fund, Inc. v. Alexander*, 614 F.2d 474, 478 (5th Cir.), *cert. denied*, 449 U.S. 919 (1980).

SourceOne asserts two different periods of time out of which the equitable defense of laches could emerge: (1) the time between the August 2000 work order

---

[9]     Waiver is essentially abandonment. See *Tristar Financial Insurance Agency, Inc. v. Equicredit Corporation*, 97 Fed. Appx. 462, 464 (5th Cir. 2004); see also *AT&T Communications v. Bell South Telecommunications Inc.*, 238 F.3d 636, 656 (5th Cir. 2001).

and the February 2001 cease and desist letter; and (2) the time between SourceOne's February 2001 denial of infringement and the instigation of this action. Response ¶ 45. With regard to the interim period between the work order and the cease and desist letter, a five month delay does not amount to an inexcusable delay. *Elvis Presley Enterprises*, 141 F.3d at 205 ("We do not find that eight months was an inexcusable delay"). SourceOne does not offer any evidence suggesting that the delay was otherwise inexcusable.

The Fifth Circuit has held: "[a]ny acts after receiving a cease and desist letter are at the defendant's own risk because it is on notice of the plaintiff's objection to such acts." *Elvis Presley Enterprises*, 141 F.3d at 205. In the case at bar, Source, by way of the cease and desist letter, clearly notified SourceOne of its objection to SourceOne's use of the word "source" in its name. As a result of this letter, any prejudice suffered by SourceOne during the interim between the letter and the filing of this suit is not attributable to the delay. Therefore, SourceOne is precluded from establishing the third element of its defense (i.e. undue prejudice). Accordingly, Source is entitled to summary judgment on this defense.

### d. Eighth Affirmative Defense -- Acquiescence

The 5th Circuit commonly refers to acquiescence as involving implicit or explicit assurances provided to the defendant by the plaintiff upon which the defendant relies. *Conan Properties*, 752 F.2d at 153; *Elvis Presley Enterprises*, 141 F.3d

at 206.  The same two time periods contended to prove laches are proffered by

SourceOne as possible interims out of which the defense of acquiescence could

plausibly arise.  Response ¶ 46.  Acquiescence can only arise prior to the cease and

desist letter.  *Elvis Presley Enterprises*, 141 F.3d at 206 ("The period of silence relevant

to acquiescence would not include any time after the cease and desist letter was

sent.").  In the absence of any explicit acquiescence, SourceOne would have to

demonstrate that some action of Source constituted implicit acquiescence.  The five

month period between the work order and the cease and desist letter is simply not

long enough to justify an inference of acquiescence.  *Id*.  Thus, summary judgment on

this defense is granted.

e.  Ninth Affirmative Defense -- Fair Use

15 U.S.C. § 1115(b)(4) provides for an affirmative defense to an incontestable

mark where the mark is being used as "a term or device which is descriptive of and

used fairly and in good faith only to describe the goods or services" of the defendant.

SourceOne contends that its name describes the goods and services it provides in that

"SourceOne" "refers to the fact that SourceOne is the one and only source needed for

its customers [sic] needs."  Response ¶ 48.  This argument is unavailing.  SourceOne

markets and sells communications equipment.  The term "SourceOne" in no way

indicates to potential customers that SourceOne is a telecommunications company.

Accordingly, Source is entitled to summary judgment on this defense.

- 20 -

## III.  <u>CONCLUSION</u>

For the reasons stated above, Source's motion for partial summary judgment is **DENIED** as to its underlying trademark infringement claims and **GRANTED** as to the affirmative defenses upon which it moved.  Source's motion for leave to file an amended motion is **DENIED** as moot.

**SO ORDERED**.

August 16, 2006.

_____
A. JOE FISH
CHIEF JUDGE